# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Lauri McCauley, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Cooperative Regions of Organic Producer Pools,<br><br>Defendant | Case No. 7:21-cv-01548<br><br><br><br>Class Action Complaint<br><br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Cooperative Regions of Organic Producer Pools ("defendant") manufactures, distributes, markets, labels and sells half and half creamer under the Organic Valley brand with a purported flavor of "French Vanilla" ("Product").

2. The front label statement of "French Vanilla" and picture of the vanilla flower and five cured vanilla beans represents the Product's characterizing or main flavor as "French Vanilla."



3. "French Vanilla" refers to vanilla from vanilla beans grown in Madagascar, a former French colony.

4. The side of the Product describes it as "flavored with organic fair trade vanilla."



5. Federal and state law require the Product's front label to disclose the source of its characterizing French vanilla flavor.[1] 21 C.F.R. § 101.22(i) (requiring statements as to whether flavor is from the characterizing ingredient, natural flavor derived from the ingredient, natural flavor from natural sources other than the ingredient or artificial sources).

6. The front label gives consumers the impression that the Product's vanilla flavor or taste is only from the ingredient of vanilla without flavors from non-vanilla sources or artificial flavors. 21 C.F.R. § 101.22(c) (requiring disclosure of artificial flavor).

7. Defendant knows that consumers prefer products without added flavor statements – "naturally flavored," "other natural flavor," "artificially flavored" – because this tells them the flavor comes from the characterizing ingredient, i.e., from the vanilla plant.

8. Consumers rightly perceive such products as being more natural than other products.

9. After foods that get their flavor only from their characterizing ingredients, consumers prefer natural flavors, which are from natural sources and made through natural processes.

10. These trends have caused demand for real vanilla to "steadily increase[e]…due to consumer demand for natural foods that are free of artificial ingredients."[2]

11. According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring" from artificial flavors and non-vanilla sources.

12. Consumers are willing to pay more for natural flavors like real vanilla and are avoiding foods and beverages which contain artificial flavors.[3]

13. At least seven out of ten consumers avoid artificial flavors because they believe the

---

[1] The FDCA and its regulations are incorporated and adopted in the New York Agriculture and Markets Law ("AGM") and accompanying regulations. See Title 1, Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR"), 1 NYCRR § 259.1.
[2] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?
[3] Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

3

synthetic ingredients are associated with detrimental health effects. [4]

14. Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

15. The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material for vanilla flavorings.

16. The vanilla bean is heated in the sun for weeks, soaked in alcohol and its flavor constituents extracted (vanilla extract).

I. Ingredient List Reveals the Front Label Representations of "French Vanilla" are Misleading

17. The Product's ingredient list reveals flavor from vanilla but also "coconut flavor."



**INGREDIENTS:** Ingredients: Organic Grade A Milk And Cream, Organic Fair Trade Unrefined Cane Sugar, Organic Fair Trade Vanilla Flavor, Organic Coconut Flavor.

18. However, consumers are misled because the front label does not disclose that one of the Product's characterizing flavors is coconut, through words or pictures of coconuts.

19. Coconut flavor compounds are mainly lactones, which are responsible for the "creamy" taste of coconuts.

---

[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

20. The main flavor compounds in coconut are lactones, which provide "creamy" notes.

21. Lactones are one of the types of volatile constituents – with carbonyls, alcohols, acids, esters and phenols necessary to produce the rich and mellow aroma of vanilla.

22. Analytical testing of the Product in the fall of 2020/winter of 2021 revealed it contains γ-nonalactone (a lactone), a synthetic flavoring substance according to the FDA. 21 C.F.R.§ 172.515 ("Synthetic flavoring substances and adjuvants.").

23. Gamma-nonalactone is from an artificial source and made through an artificial process.

24. Gamma-nonalactone (γ-nonalactone) is not found in coconuts, which means even consumers who seek out the ingredient list and observe "organic coconut flavor" will not know this is an artificial coconut flavor.

25. The ingredient list conceals this added artificial coconut flavor with the use of the term "organic coconut flavor" which misleads consumers.

26. The FDA has stated it is misleading to label a food or beverage as "(French/Madagascar) Vanilla," with an emphasis only on the vanilla used because this implies the taste is exclusively or predominantly from vanilla, even though the flavor is not derived from vanilla beans.

27. Gamma-nonalactone is a synthetic, artificial flavor that "simulates, resembles or reinforces the characterizing flavor," which requires the front label to state, "Artificially Flavored French Vanilla," "Artificially Flavored Coconut" and/or "French Vanilla and Coconut, Naturally and Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

28. Reasonable consumers cannot know from reading the ingredient list that (1) the added coconut flavor contains compounds which imitate and simulate vanilla's flavor, (2) the

5

Product contains artificial flavors and (3) the coconut flavoring compounds are present in greater quantity than the vanilla flavor compounds.

29. Even though vanilla flavor is listed ahead of coconut flavor on the ingredient list, this is based on weight.

30. Since the coconut flavor is more concentrated, it can be present in a lesser amount yet still provide more flavoring to the Product than the vanilla flavor does.

31. This means the Product is further represented because its characterizing flavor should be "Coconut" instead of "(French) Vanilla."

32. Moreover, the analytical testing revealed the Product contained a trace or de minimis amount of vanilla, based on the absence and relative amounts of critical flavor compounds.

33. The Product lacks the expected (French) vanilla taste because added $\gamma$-nonalactone is not sufficient to replace what is provided from real French vanilla beans.

34. Reasonable consumers must and do rely on defendant to honestly report what its products contain – natural ingredients, especially active ingredients that are natural.

35. Defendant misrepresented the Products through affirmative statements, half-truths, and omissions.

36. Defendant sold more of the Product and at a higher price than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

37. Had plaintiff and the proposed class members known the truth, they would not have bought the Product or would have paid less for it.

38. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $4.29 for 16 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold

for absent the misleading representations and omissions.

## Jurisdiction and Venue

39. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

40. Under CAFA, district courts have original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity.

41. Plaintiff Lauri McCauley is a citizen of New York.

42. Defendant Cooperative Regions of Organic Producer Pools is a Wisconsin corporation or stock cooperative with a principal place of business in La Farge, Vernon County, Wisconsin.

43. Diversity exists because plaintiff Lauri McCauley and defendant are citizens of different states.

44. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

45. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – plaintiff's purchase of the Product.

46. Venue is further supported because many class members reside in this District.

## Parties

47. Plaintiff Lauri McCauley is a citizen of Cortlandt Manor, Westchester County, New York.

48. Defendant Cooperative Regions of Organic Producer Pools is a Wisconsin corporation or stock cooperative with a principal place of business in La Farge, Wisconsin, Vernon

7

County.

49. Defendant is one of the largest organic dairy cooperative organizations in the country and is known for its high-end cheese, milk, yogurts and coffee creamers.

50. The Product is sold to consumers from retail and online stores of third-parties across the country.

51. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, from one or more locations, including Stop & Shop, 1831 E Main St, Peekskill, NY 10566, in 2020.

52. Plaintiff bought the Product at or exceeding the above-referenced price because she wanted to buy a product with the qualities and attributes represented herein and relied upon what the label indicated and/or omitted.

53. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

54. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

55. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labeling is consistent with its composition.

<u>Class Allegations</u>

56. The class will consist of all purchasers of the Product who reside in New York, Rhode Island, Connecticut, Maryland, Minnesota and Ohio during the applicable statutes of limitations.

57. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

58. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

59. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

60. Plaintiff is an adequate representative because her interests do not conflict with other members.

61. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

62. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

63. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

64. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>
<u>(Consumer Protection Statutes)</u>

65. Plaintiff incorporates by reference all preceding paragraphs.

66. Plaintiff and class members desired to purchase products with the attributes highlighted by the labeling and marketing.

67. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

68. Defendant misrepresented the Product through its statements, omissions, ambiguities, half-truths and/or actions.

69. Defendant intended that Plaintiff and the Class rely upon Defendant's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

70. Defendant knew or should have known that its representations about the Product's flavoring source were material and likely to mislead consumers.

71. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability<br>and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

72. Plaintiff incorporates by reference all preceding paragraphs.

73. The Product was manufactured, labeled and sold by defendant and warranted to plaintiff and class members that it possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and health-related attributes which it did not.

74. The presence or absence of the relevant components was expressly and impliedly warranted to Plaintiff and others.

75. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

76. This duty is based on Defendant's outsized role in the market for this type of Product.

77. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

78. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by regulators and consumers to its main office over the past several years regarding the Product.

79. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

80. Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

### Negligent Misrepresentation

81. Plaintiff incorporates by reference all preceding paragraphs.

82. Defendant had a duty to truthfully represent the Product, which it breached.

83. This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

84. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

85. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

86. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

87. Plaintiff incorporates by reference all preceding paragraphs.

88. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

89. Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers.

90. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

91. Plaintiff incorporates by reference all preceding paragraphs.

92. Defendant obtained benefits and monies because the Product was not as represented

and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   February 21, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

7:21-cv-01548
United States District Court
Southern District of New York

Lauri McCauley, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Cooperative Regions of Organic Producer Pools,

Defendant

Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cutter Mill Rd Ste 409
  Great Neck NY 11021-3104
     Tel: (516) 268-7080
     Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  February 21, 2021

/s/ Spencer Sheehan
Spencer Sheehan